**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AKERS RAILROAD HOLDINGS, LLC,

*Plaintiff*,

v.

MICHAEL STRAHLMAN, *et al.*,

*Defendants*.

Case No. 1:26-cv-00020

Judge Jeffery P. Hopkins

## OPINION AND ORDER

Defendants Michael Strahlman and Second Chance Salvage, LLC ("Defendants") move to dismiss Plaintiff Akers Railroad Holdings, LLC's ("Plaintiff" or "Akers") Complaint (Compl., Doc. 2) for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Doc. 4. For the reasons stated below, the Motion is **GRANTED**.

### I. BACKGROUND

Akers is a nationwide supplier and recycler of railroad ties; the rectangular wooden pieces used to support steel railroad tracks. Compl., Doc. 2, ¶ 6. The company routinely contracts with railway companies to collect, recycle, and dispose of ties removed during maintenance of rail lines across the United States. *Id.* ¶¶ 7–9. Its principal office is in Cincinnati, Ohio, where it conducts the company's financial and administrative functions, including processing vendor invoices and payments, employee compensation, and related administrative matters. Grantham Decl., Ex. 1, Doc. 7-1, ¶ 4. Among the company's largest regular customers is BNSF Railway Company ("BNSF"), a freight rail company that Akers alleges is among the largest in North America. Compl., Doc. 2, ¶ 9.

On January 10, 2023, Akers and Strahlman, a Nevada citizen and one of the two defendants in this action, entered into a written employment agreement under which Akers hired Strahlman as its general manager to assist in managing its relationship with BNSF. *Id.* ¶¶ 10, 11. The employment agreement describes Akers as an Ohio limited liability company and states that the agreement will be "governed by and construed in accordance with the laws of the State of Ohio." Compl., Doc. 2, Ex. 1, PageID 57, 60. At or near the time of his hire, Strahlman disclosed to Akers that he owned Defendant Second Chance, a Nevada limited liability company, which Strahlman described as just a small salvage operation with limited equipment and employees. Compl., Doc. 2, ¶ 12. The parties agreed that Second Chance could act as a subcontractor to Akers but Akers would serve as the general contractor on BNSF work. *Id.* ¶ 13. Akers claims that the relationship between the parties deteriorated when Strahlman and Second Chance went directly to BNSF for work on more than one occasion in violation of the employment agreement and ultimately cut Akers out of any work with BNSF. *Id.* ¶¶ 21, 32–33. Akers terminated Strahlman's employment on November 18, 2025. *Id.* ¶ 33.

On November 26, 2025, Akers filed suit against Defendants in the Hamilton County Court of Common Pleas asserting: (1) breach of contract, (2) the faithless servant doctrine, and (3) tortious interference against Second Chance. Doc. 1. Defendants removed the case to Federal District Court on January 8, 2026. *Id.* Thereafter, Defendants moved to dismiss the Complaint (Compl., Doc. 2) for lack of personal jurisdiction. Doc. 4. Akers responded in opposition. Doc. 7. Defendants replied. Doc. 8. The matter is now ripe for resolution.

## II. LAW AND ANALYSIS

Ohio law requires a two-part showing before a court may exercise personal jurisdiction over a nonresident defendant: the state's long-arm statute must authorize jurisdiction, and the exercise of jurisdiction must comport with federal due process. *Conn v. Zakharov,* 667 F.3d 705, 712 (6th Cir. 2012); *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023). Because Akers has failed to establish that exercising personal jurisdiction over Defendants would comport with due process, dismissal is warranted.

### A. Ohio's Long-Arm Statute

There are two types of personal jurisdiction: general and specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Akers does not contend that Defendants are subject to general jurisdiction, and the allegations in its Complaint fail to state facts supporting it. Accordingly, the Court cannot exercise general personal jurisdiction over Defendants. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (no general personal jurisdiction where no allegations support it). In regard to specific jurisdiction, Ohio Rev. Code § 2307.382 enumerates nine categories of conduct that subject an entity to personal jurisdiction in this state if a cause of action arises out of such conduct. *See* Ohio Rev. Code § 2307.382. Here, Akers argues that personal jurisdiction is appropriate under Ohio Rev. Code § 2307.382(A)(1), based on Defendants "[t]ransacting . . . business in th[is] state."

However, Ohio amended its long-arm statute effective April 7, 2021. The amended statute now authorizes the exercise of specific personal jurisdiction to the full extent permitted by the Ohio and United States Constitutions. *See* Ohio Rev. Code § 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution

and the United States Constitution."); *C.T. v. Red Roof Inns, Inc.*, No. 2:19-cv-5384, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021) (Marbley, J.) (noting that after Ohio's long-arm statute was updated, it became "coextensive" with the U.S. Constitution); *In re Hotel TVPRA Litig.*, No. 2:22-cv-1924, 2023 WL 3075851, at *5 (S.D. Ohio Apr. 25, 2023) (Marbley, J.) (same). It follows that the Court need not conduct a separate statutory inquiry. *See Grado v. Med., Indus., & Sci. Prods. Corp.*, No. 1:24-cv-158, 2025 WL 2227879, at *7 (S.D. Ohio Aug. 5, 2025) ("While the amendment raised the question whether a court must separately analyze the jurisdictional exercise under both the long-arm statute and the Due Process Clause,' . . . in the intervening years courts in this district have determined that such separate analyses are unnecessary.") (cleaned up and citations omitted). This Court's analysis of Plaintiff's assertion of specific personal jurisdiction over Defendants therefore turns on whether the Due Process Clause has been satisfied.

**B. Due Process**

The Sixth Circuit evaluates specific personal jurisdiction under a three-part due-process test. First, the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; second, "the cause of action must arise from [or relate to] the defendant's activities there"; and third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citation omitted). Here, even when construing the facts in the Complaint most favorably in Plaintiff's favor, the allegations and submitted materials do not establish specific personal jurisdiction over Defendants.

*1. Purposeful Availment*

First, Akers has not shown that Defendants purposefully availed themselves of Ohio. Purposeful availment occurs "where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations omitted). The Sixth Circuit in *Calphalon* held that having an Ohio choice-of-law provision in an agreement, communicating with an Ohio company by phone, mailing and faxing documents, making payments from Ohio, and making a few Ohio visits did not establish purposeful availment where the defendant performed its central obligations elsewhere. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–723 (6th Cir. 2000). There, the Circuit emphasized that "the *quality* rather than the quantity of the contacts is the proper subject of review." *Id.* (emphasis added).

The same principle controls here. Strahlman performed his work duties in Colorado, Texas, Oklahoma, Nebraska, Wyoming, New Mexico, Washington, Montana, and Missouri; he never traveled to Ohio for work, negotiated contracts related to any of the projects there, performed services there, solicited the State's customers, or directed business activity there. Strahlman Decl., Doc. 5, ¶ 2. And work-related meetings occurred in Missouri, Louisiana, Mississippi, Nebraska, and Montana. *Id.* ¶ 10. However, by contrast, Plaintiff's principal office is in Cincinnati, Ohio, where it conducts the company's financial and administrative functions, including processing vendor invoices and payments, employee compensation, and related administrative matters. Grantham Decl., Ex. 1, Doc. 7-1, ¶ 4. Akers in his declaration identified and seeks to rely on approximately 52 emails involving Defendants that were sent or received "to or from individuals" at Plaintiff's Ohio headquarters during Strahlman's

employment. *Id.* ¶ 17. The declaration also states that Strahlman attended a weekly conference call with the Ohio team to provide updates on business and financial matters related to the company. *Id.* ¶ 18. Strahlman asserts that the employment agreement was actually negotiated in Nevada and Missouri. Strahlman Decl., Doc. 5, ¶ 7. However, Plaintiff asserts that Cincinnati team members were involved in negotiations and in drafting the employment agreement. Grantham Decl., Ex. 1, Doc. 7-1, ¶ 8.

Notwithstanding those considerations, as the Sixth Circuit has held, what matters is the *quality* of the contacts, not the quantity. *Calphalon Corp.*, 228 F.3d at 722. And contracting with an Ohio company simply is not enough. Here, Akers fails to demonstrate that those communications (including the 52 emails) with the Ohio office concerned work Defendants performed in Ohio, or that they related to Defendants' Ohio projects, Defendants' Ohio customers, or Defendants' Ohio business opportunities. Indeed, from what we know, the calls and emails may have concerned only *administrative* matters, while the brunt of Defendants' work for the company occurred elsewhere. Strahlman Decl., Doc. 5, ¶ 2.

In addition, it is also alleged that Second Chance submitted invoices to the Cincinnati headquarters and received payments processed there. Grantham Decl., Doc. 7-1, ¶ 22. But those administrative billing and payment arrangement details are insufficient to show its *deliberate* and intentional personal availment to the State of Ohio. *Calphalon Corp.*, 228 F.3d at 722. And as was the case in *Calphalon,* the employment agreement's Ohio choice-of-law clause is also not dispositive. *Calphalon Corp.*, 228 F.3d at 723. Even if staff members in Cincinnati were involved in contract negotiations at some point, it would not tip the scale in favor of purposeful availment because there is very little evidence of Defendants' actual deliberate

engagement with the State of Ohio for anything other than insignificant administrative matters. These contacts are thus insufficient to establish purposeful availment in this case.

*2. Cause of Action*

Second, Plaintiff's claims do not arise from or relate to any Ohio-directed conduct by Defendants. A plaintiff must show that the defendant "purposefully direct[ed] communications into the forum, and those communications form the 'heart' of the cause of action." *Intera Corp. v. Henderson*, 428 F.3d 605, 617–18 (6th Cir. 2005). Here, Akers' claims in this matter are alleged to arise from Strahlman's breach of the restrictive covenants, alleged disloyalty, and Second Chance's alleged interference in connection with projects and business opportunities all stemming from contracts performed outside of Ohio. Compl., Doc. 2; Strahlman Decl., Doc. 5, ¶ 2. Therefore, Plaintiff has not shown that its claims arise from or relate to any Ohio-directed conduct by Defendants.

*3. Reasonableness*

Third, exercising personal jurisdiction over Defendants would be unreasonable. Here, courts typically consider five factors: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the States in furthering fundamental substantive social policies." *Auto Place, LLC v. Cargill*, No. 1:19-cv-130, 2020 WL 1694996, at *5 (S.D. Ohio Apr. 7, 2020). Both Defendants reside in Nevada and neither has any meaningful ties to Ohio. Strahlman Decl., Doc. 5, ¶¶ 3–4. The relevant work, alleged conduct in the Complaint, and in-person meetings all occurred outside Ohio, and the record indicates that Defendants and their witnesses would be burdened by litigating here. *Id.* ¶ 10. Although

Ohio has some interest in providing a forum for disputes involving an entity using a Cincinnati address, that interest is limited because the parties' relationship and the alleged misconduct were centered elsewhere. On balance the relevant factors all weigh against the Court exercising specific personal jurisdiction against Defendants.

## III. CONCLUSION

Based on the foregoing, the Court lacks an ability under Ohio's long-arm statute or the Due Process Clause to exercise personal jurisdiction over Defendants. Accordingly, the Court **DISMISSES** Plaintiff's Complaint (Compl., Doc. 2) **WITHOUT PREJUDICE**. The Clerk is instructed to **TERMINATE** this civil action from the Court's docket.

**IT IS SO ORDERED.**

September 29, 2026

Jeffery P. Hopkins
United States District Judge